UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

|  |  |
|---|---|
| LABORERS LOCAL #235 PENSION FUND, on behalf of itself and all others similarly situated,<br><br>        Plaintiff,<br><br>    vs.<br><br>RENTOKIL INITIAL PLC, ANDREW M. RANSOM, STUART M. INGALL-TOMBS, and BRADLEY S. PAULSEN,<br><br>        Defendants. | Case No.: 2:24-cv-2932-MSN-tmp<br><br>Hon. Mark S. Norris<br><br><u>CLASS ACTION</u><br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE CITY OF BIRMINGHAM RETIREMENT AND RELIEF SYSTEM FOR APPOINTMENT AS <u>LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL</u>**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ................................................................................ 1

II.   PROCEDURAL HISTORY.................................................................................... 3

III.  FACTUAL BACKGROUND................................................................................. 3

IV.   ARGUMENT...................................................................................................... 5

      A.    The PSLRA Standard for Appointing Lead Plaintiff................................................5

      B.    Birmingham Is the "Most Adequate Plaintiff" and Should Be Appointed
           Lead Plaintiff ...........................................................................................6

           1.    Birmingham Has Satisfied the PSLRA's Procedural Requirements ..............6

           2.    Birmingham Has the Largest Financial Interest in the Relief Sought
               by the Class ...........................................................................................7

           3.    Birmingham Satisfies Rule 23's Typicality and Adequacy
               Requirements ........................................................................................7

               a.    Birmingham's Claims Are Typical of Those of the Class....................8

               b.    Birmingham Will Fairly and Adequately Protect the Interests
                    of the Class........................................................................................9

           4.    Birmingham Is Precisely the Type of Lead Plaintiff Envisioned by
               the PSLRA ...........................................................................................9

      C.    The Court Should Approve Birmingham's Selection of Counsel ........................11

V.    CONCLUSION.................................................................................................. 14

i

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Bloom v. Anderson (FirstEnergy Corp. Derivative Litig.)*,
   No. 20-cv-4534, 2020 WL 6710429 (S.D. Ohio Nov. 16, 2020) ........................................... 13

*Franchi v. SmileDirectClub, Inc.*,
   No. 19-cv-962, 2020 WL 6479561 (M.D. Tenn. Jan. 27, 2020) ......................................... 7, 8

*French v. CBL & Assocs. Props.*, *Inc.*, No.,
   16-cv-165, 2016 WL 7668501 (E.D. Tenn. Sept. 26, 2016) ...................................... 7, 8, 9, 11

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ...................................................................................... 11

*Ohio Pub. Emps. Ret. Sys. v. Fannie Mae*,
   357 F. Supp. 2d 1027 (S.D. Ohio 2020) .................................................................. 9, 10, 11

**Statutes**

15 U.S.C. § 78u-4(a) .............................................................................................. *passim*
15 U.S.C. § 78j(b) ............................................................................................................. 3
15 U.S.C. § 78t(a) ............................................................................................................. 3

**Rules**

Fed. R. Civ. P. 23 ................................................................................................... 2, 6, 8, 9

**Regulations**

17 C.F.R. § 240.10b-5 ........................................................................................................ 3

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 (1995) ........... 10
S. Rep. No. 104-98 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ....................................... 10

ii

Proposed Lead Plaintiff the City of Birmingham Retirement and Relief System ("Birmingham") respectfully submits this Memorandum of Law pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), in support of its motion for an order: (1) appointing Birmingham as Lead Plaintiff for a class (the "Class") of all persons and entities that purchased Rentokil Initial plc ("Rentokil" or the "Company") American Depositary Shares ("ADSs") between December 1, 2023 and September 10, 2024, inclusive (the "Class Period") in the above-captioned securities class action (the "Action"); (2) approving its selection of Saxena White P.A. ("Saxena White") as Lead Counsel for the Class and Stranch, Jennings & Garvey, PLLC ("SJ&G") to serve as Local Counsel for the Class; and (3) granting any such other and further relief as the Court may dem just and proper.

## I.    PRELIMINARY STATEMENT

Birmingham—a sophisticated institutional investor that oversees approximately $1billion in assets on behalf of its beneficiaries and has significant experience serving as a lead plaintiff—respectfully submits that it is the "most adequate plaintiff" under the PSLRA and should be appointed Lead Plaintiff on behalf of the Class.  Birmingham satisfies all of the prerequisites for lead plaintiff appointment.  As set forth below, Birmingham incurred a loss of approximately $221,673 as calculated under the prevailing last-in-first-out ("LIFO") loss calculation method, on its purchases of Rentokil ADSs.[1]  Accordingly, Birmingham has a powerful economic interest in

---

[1] Birmingham's transactions in Rentokil ADSs during the Class Period are set forth in the certification attached as Exhibit A to the Declaration of J. Gerard Stranch IV in Support of Birmingham's Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Stranch Decl."), filed concurrently herewith.  A chart setting forth the calculation of Birmingham's losses is attached as Exhibit B to the Stranch Decl.

1

directing the litigation and recovering the losses suffered by the Class—an interest believed to be greater than that of any competing movant.

Birmingham also meets the typicality and adequacy requirements set out in Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because its claims are typical of those of absent Class members and it will fairly and adequately represent the interests of the Class. 15 U.S.C. § 78u-4(a)(3)(B)(iii). Birmingham is familiar with the obligations and responsibilities of the Lead Plaintiff, is not subject to any unique defenses, and has the incentive and ability to effectively supervise the prosecution of the Action in the best interests of the Class. Indeed, the PSLRA's legislative history shows that Birmingham is precisely the type of institutional investor whose participation in securities class actions the PSLRA was meant to foster. In short, Birmingham is the "most adequate plaintiff" and should be appointed Lead Plaintiff.

Birmingham also respectfully requests that the Court approve its selection of Saxena White to serve as Lead Counsel, and SJ&G to serve as Local Counsel for the Class. Saxena White is a leading national law firm specializing in representing institutional investors in securities and shareholder litigation. Saxena White has substantial experience and success prosecuting securities class actions and other forms of shareholder litigation in this Circuit and throughout the nation, and the expertise and resources to prosecute litigation of this complexity and scale. Indeed, Saxena White investigated, developed, and filed the claims in the first and only action pending before this Court. Similarly, SJ&G has extensive experience prosecuting complex litigation, including securities class actions, and will serve to facilitate the litigation on a local level.

2

## II.    PROCEDURAL HISTORY

Pending before the Court is an Action brought against: (1) Rentokil;[2] (2) Andrew M. Ransom, the Company's Chief Executive Officer ("CEO") and member of the Board of Directors; (3) Stuart M. Ingall-Tombs, the Company's Chief Financial Officer and member of the Board of Directors; and (4) Bradley S. Paulsen, the CEO of Rentokil's North America region (collectively, "Defendants"), for violations of Sections 10(b) and 20(a) of the Exchange Act, as amended by the PSLRA (15 U.S.C. §§ 78j(b) and 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

## III.    FACTUAL BACKGROUND

Rentokil provides pest control, hygiene, and wellness services worldwide.  The Company's three main business lines are Pest Control, Hygiene & Wellbeing, and France Workwear.  Rentokil is the largest global pest control services provider with North America Pest Control accounting for more than half of the Company's annual revenue.

Leading up to the Class Period, on October 12, 2022, Rentokil announced that it had acquired Memphis, Tennessee-based Terminix Global Holdings, Inc. ("Terminix") in a transaction valued at $6.7 billion (the "Terminix Acquisition").  As a result, the Terminix business became part of Rentokil's pest control business line, making Rentokil the largest pest control services provider in North America.  After the Terminix Acquisition closed, Rentokil assured investors that it was well positioned to successfully integrate Terminix into Rentokil's pest control business as "integration planning has confirmed the strong potential of the combination, which is both synergistic and complementary."

---

[2] Rentokil is headquartered in Crawley, England.  The Company's ADSs trade on the New York Stock Exchange under the ticker symbol "RTO."

3

Throughout the Class Period, Defendants touted the Company's "strong progress" in integrating Terminix to "create a powerhouse business in the world's largest pest control market." For example, Rentokil reported that "Phase One of the integration completed at the end of 2023 and has delivered the foundations for success," including "large integration pilots and initial branch co-locations," and assured investors that the Company had "streamlined and unified the organization to create a single Rentokil Terminix team." Additionally, Defendants emphasized that the 3.1% North America organic revenue growth for fiscal year 2023 "was achieved alongside significant progress in the Terminix integration."

The Action alleges that Defendants made false and/or misleading statements about the Terminix integration and failed to disclose among other things that: (1) Rentokil experienced levels of disruption in the early pilots of the Terminix integration; (2) Rentokil experienced significant, ongoing, self-inflicted execution challenges integrating Terminix; (3) the disruption and execution challenges imperiled Rentokil's integration plan for Terminix; (4) Rentokil and Terminix were still two separate businesses that were not yet integrated; and (5) Rentokil's failure to integrate Terminix negatively impacted the Company's business and operations, particularly organic revenue growth in North America.

On April 18, 2024, before the markets opened, the truth began to emerge regarding the Terminix integration when Rentokil announced its financial results for the first quarter of 2024, ended March 31, 2024. The Company reported that organic revenue growth in North America had increased by only 1.5% year-over-year—below the Company's guidance of 2% for the first quarter and 2% to 4% for the full year. Despite acknowledging the disappointing first quarter results, Defendants continued to assure investors that the "integration program is on track," with the

4

Company "now well into phase 2." On this news, the price of Rentokil ADSs fell $2.64 per ADS, or more than 9%, to close at $25.61 per ADS on April 18, 2024.

The truth was fully revealed before markets opened on September 11, 2024, when Rentokil provided an unscheduled "Trading Update," announcing that the Company now expected only 1% organic revenue growth in North America for the second half of 2024—well below the Company's prior guidance. Rentokil further admitted that it was experiencing "modest disruption to organic growth from branch integration" and had "2 separate businesses, which are largely at an operational front-end not integrated yet." On this news, the price of Rentokil ADSs fell $6.65 per ADS, or more than 21%, to close at $24.95 per ADS on September 11, 2024.

Defendants' material misrepresentations and omissions, and the revelations thereof, thus caused Birmingham and the Class to incur substantial damages.

## IV.    ARGUMENT

### A.    The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting a lead plaintiff for "each private action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(I); *see also* 15 U.S.C. § 78u-4(a)(3)(B). First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purposed plaintiff class—
>
> (I)    of the pendency of the action, the claims asserted therein, and the purported class period; and

(II)    That, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, pursuant to the PSLRA, a court is to consider any motion made by class members to serve as lead plaintiff and appoint the "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(i). In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the movant who: (1) filed a complaint or filed a motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) otherwise satisfies the requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  This presumption may be rebutted only by "proof" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

**B.      Birmingham Is the "Most Adequate Plaintiff" and Should Be Appointed Lead Plaintiff**

Birmingham respectfully submits that it is presumptively the "most adequate plaintiff" because it has complied with the PSLRA's procedural requirements, possesses the largest financial interest of any qualified movant, and satisfies Rule 23's typicality and adequacy requirements.

**1.      Birmingham Has Satisfied the PSLRA's Procedural Requirements**

Birmingham's counsel Saxena White published notice on November 26, 2024 on *GlobeNewswire* alerting investors to the filing of the Action and the January 27, 2025 deadline for seeking appointment as Lead Plaintiff.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i); Notice, Stranch Decl., Ex. C.  Thus, pursuant to the PSLRA, any member of the proposed Class may apply for appointment as Lead Plaintiff within 60 days of the publication of the notice, *i.e.*, on or before January 27, 2025.  Accordingly, Birmingham has timely filed its motion to serve as Lead Plaintiff.

6

### 2. Birmingham Has the Largest Financial Interest in the Relief Sought by the Class

Birmingham should be appointed Lead Plaintiff because it has the "largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" so long as that movant "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Franchi v. SmileDirectClub, Inc.*, No. 19-cv-962, 2020 WL 6479561, at *3-4 (M.D. Tenn. Jan. 27, 2020) (finding that the movant claiming the largest loss had "the largest financial interest in [the] litigation"); *French v. CBL & Assocs. Props., Inc.*, No. 16–cv–165, 2016 WL 7668501, at *2 (E.D. Tenn. Sept. 26, 2016) (same).

During the Class Period, Birmingham sustained a loss of approximately $221,673 on a LIFO basis on its transactions in Rentokil ADSs. *See* Stranch Decl., Exs. A, B. Birmingham is unaware of any other movant seeking appointment as Lead Plaintiff that has a larger financial interest in the outcome of the action and also satisfies the typicality and adequacy requirements of Rule 23. Accordingly, Birmingham has the largest financial interest of any qualified movant seeking Lead Plaintiff status and, because it satisfies the applicable requirements of Rule 23, as discussed below, is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii).

### 3. Birmingham Satisfies Rule 23's Typicality and Adequacy Requirements

In addition to requiring the identification of the movant with the largest financial interest, the PSLRA also directs that a lead plaintiff must "otherwise satisf[y] the requirements of Rule 23 . . . ." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). With respect to class certification, Rule 23(a) requires that: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

7

representative parties are typical of the claims or defenses of the class; and (4) the representative

parties will fairly and adequately protect the interests of the class.  Fed. R. Civ. P. 23(a).  However,

at this stage of the litigation, a lead plaintiff movant need only "make a prima facie showing that

it meets the typicality and adequacy requirements of Rule 23."  *SmileDirectClub*, 2020 WL

6479561, at *3.

### a.  Birmingham's Claims Are Typical of Those of the Class

Pursuant to Rule 23(a)(3), the claims or defenses of the representative party must be

"typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The typicality

requirement is satisfied when "claims arise from the same events, practices, or course of conduct,

and are based on the same legal theories as the claims of other class members." *French*, 2016 WL

7668501, at *3; *see also SmileDirectClub*, 2020 WL 6479561, at *3 (finding lead plaintiff movant

had satisfied the typicality requirement as the movant's claims arose "from the same event or

practice or course of conduct that gives rise to the claims of other class members and involve the

same legal theory") (internal quotation omitted).

The typicality requirement is satisfied here because Birmingham, which is not subject to

any unique or special defenses, seeks the same relief and advances the same legal theories as the

other Class members.  Like all members of the Class, Birmingham: (1) purchased Rentokil ADSs

during the Class Period; (2) at prices that were artificially inflated by Defendants' materially false

and misleading statements and/or omissions; and (3) was damaged thereby when the truth was

revealed.  *See  French*, 2016 WL 7668501, at *3 (finding lead plaintiff movant's claims were

"typical of those of the class because, like all class members, [movant] claims that [d]efendants

violated federal securities laws and that it purchased [issuer's] securities during the class period at

artificially inflated prices, thereby suffering damages").  As such, Birmingham's claims are typical

of the Class's claims and satisfy Rule 23(a)(3)'s typicality requirement.

### b. Birmingham Will Fairly and Adequately Protect the Interests of the Class

The adequacy requirement of Rule 23(a)(4) is satisfied when a representative party establishes that it will "fairly and adequately represent[] the interests of the class." *Ohio Pub. Emps. Ret. Sys. v. Fannie Mae*, 357 F. Supp. 2d 1027, 1034 (S.D. Ohio 2020). The adequacy requirement is satisfied if "(1) plaintiff's interests are not antagonistic to those of the class they seek to represent and (2) plaintiff's counsel is qualified to conduct the litigation." *Id.*

Here, Birmingham will fairly and adequately represent the interests of the proposed Class. Birmingham's interests are aligned with those of the other Class members and are not antagonistic in any way, and there are no facts to suggest any actual or potential conflict of interest exists between Birmingham and the other Class members. As an institutional investor with a substantial financial interest in the litigation, Birmingham has the resources, experience, and incentive to faithfully represent the Class and vigorously prosecute the litigation. *See French*, 2016 WL 7668501, at *3 (an institutional investor's substantial financial stake in the litigation ensured it had the incentive to vigorously prosecute the class claims).

Birmingham has further demonstrated its adequacy through its selection of Saxena White as proposed Lead Counsel for the Class. Indeed, Saxena White filed the first and only Action on behalf of the Class. As discussed below, *see infra* Section IV.C, Saxena White is highly qualified and experienced in the area of securities class action litigation and has repeatedly demonstrated its ability to effectively prosecute complex securities class actions and other forms of shareholder litigation. Accordingly, Birmingham satisfies the adequacy requirement.

### 4. Birmingham Is Precisely the Type of Lead Plaintiff Envisioned by the PSLRA

In addition to satisfying the PSLRA's lead plaintiff provisions and the requirements of Rule 23, Birmingham is the paradigmatic lead plaintiff envisioned by Congress in its enactment of the

9

PSLRA.  Birmingham is a sophisticated "institutional investor" with a substantial financial interest in the litigation, "which comports with the PSLRA's expressed preference for such lead plaintiffs." *Fannie Mae*, 357 F. Supp. 2d at 1035 ("The PSLRA's legislative history explains: with pension funds accounting for $4.5 trillion or nearly half of the institutional assets, in many cases the beneficiaries of pension funds—small investors—ultimately have the greatest stake in the outcome of the lawsuit") (internal quotation marks omitted); *see also* S. Rep. No. 104-98, at 11 (1995), *reprinted* in 1995 U.S.C.C.A.N. 679, 690 ("The committee intends to increase the likelihood that institutional investors will serve as lead plaintiffs"); H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted* in 1995 U.S.C.C.A.N. 730, 733 (1995) (explaining that "increasing the role of institutional investors in the class action will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions").

Birmingham, which has more than $1 billion in assets under management, has significant resources and a substantial financial interest in this litigation.  Therefore, Birmingham has the ability, resources, and incentive to vigorously represent the claims of the Class and supervise Class counsel.  Birmingham is also well aware of the Lead Plaintiff's duties, including the responsibility to oversee and supervise the litigation separate and apart from counsel. Birmingham's understanding of the fiduciary duties of a lead plaintiff under the PSLRA is informed by its prior experience in prosecuting and resolving securities actions under the PSLRA, including actions where Saxena White served as lead counsel: *In re: BHP Billiton Ltd. Sec. Litig.*, No. 16-cv-1445 (S.D.N.Y.) ($50 million settlement); *In re BRF S.A. Sec. Litig.*, No. 18-cv-2213 (S.D.N.Y.) ($40 million settlement); *Westchester Putnam Cntys. Heavy & Highway Laborers Local 60 Benefit Funds v. Brixmor Prop. Grp., Inc.*, No. 16-cv-2400 (S.D.N.Y.) ($28 million settlement with Saxena White serving as lead counsel); *City of Sterling Heights Police & Fire Ret. Sys. v. Reckitt*

*Benckiser Grp. plc*, No. 20-cv-10041 (S.D.N.Y.) ($19.6 million settlement); *City of Birmingham Firemen's & Policemen's Supp. Pension Sys. v. Credit Suisse Group AG*, No. 17-cv-10014 (S.D.N.Y.) ($15.5 million settlement with Saxena White serving as lead counsel); and *Keippel v. Health Ins. Innovations, Inc.*, 8:19-cv-00421 (M.D. Fla.) ($11 million settlement with Saxena White serving as lead counsel). In addition, Birmingham is willing to oversee the vigorous prosecution of the Action and has pledged to "provid[e] testimony at deposition and trial, if necessary." Certification, Stranch Decl., Ex. A. Thus, Birmingham is the paradigmatic lead plaintiff as contemplated by the PSLRA.

### C.    The Court Should Approve Birmingham's Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the class, subject to court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v); *French*, 2016 WL 7668501, at *3. The Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(a); *see Fannie Mae*, 357 F. Supp. 2d at 1034 ("'The district court must approve the lead plaintiff's choice of counsel, but Congress gave the lead plaintiff, not the court, the power to select a lawyer for the class'") (quoting *In re Cavanaugh*, 306 F.3d 726, 732 n.11 (9th Cir. 2002)). Birmingham respectfully submits that its selection of Saxena White as Lead Counsel for the Class and SJ&G as Local Counsel for the Class should be approved. *See* Firm Resume, Stranch Decl., Ex. D.

Saxena White has substantial experience representing investors and a demonstrated history of success serving as lead counsel in securities class actions and other forms of complex shareholder litigation. *See* Stranch Decl., Ex. D (Firm resume of Saxena White). Saxena White's track record in securities litigation includes: the $210 million recovery for the investor class in *In re Wilmington Trust Securities Litigation*, No. 10-cv-990 (D. Del.); the $135 million recovery in *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, No. 17-cv-304 (D. Colo.); the

$73 million recovery in *In re Rayonier Inc. Securities Litigation*, No. 14-cv-1395 (M.D. Fla.); the $65 million recovery in *In re Apache Corp. Securities Litigation*, No. 21-cv-575 (S.D. Tex.); the $63 million recovery in *Plymouth County Retirement System v. Patterson Cos. Inc.*, No. 18-cv-871 (D. Minn.); the $55 million recovery in *Leventhal v. Chegg, Inc.*, No. 21-cv-0953 (N.D. Cal.) (pending final approval); the $53.3 million recovery in *Central Laborers' Pension Fund v. SIRVA, Inc.*, No. 04-cv-7644 (N.D. Ill.); the $50 million recovery in *In re HD Supply Holdings, Inc. Securities Litigation*, No. 17-cv-2587 (N.D. Ga.); the $35 million recovery in *City of Hollywood Police Officers' Retirement System v. Henry Schein, Inc.*, No. 19-cv-5530 (E.D.N.Y.); the $31.9 million recovery in *In re Perrigo Company plc Securities Litigation*, No. 19-cv-70 (S.D.N.Y.); the $30 million recovery in *In re James River Holdings Ltd. Securities Litigation*, No. 21-cv-444 (E.D. Va.); the $30 million recovery in *City of Miami Fire Fighters' & Police Officers' Retirement Trust v. Cerence Inc.*, No. 22-cv-10321 (D. Mass.); the $28.5 million recovery in *In re FibroGen, Inc. Securities Litigation*, No. 21-cv-2623 (N.D. Cal.); the $28 million recovery in *Sheet Metal Workers Local 19 Pension Fund v. ProAssurance Corp.*, No. 20-cv-856 (N.D. Ala.); and the $2.75 million recovery in *In re AtriCure, Inc. Securities Litigation*, No. 08-cv-867 (S.D. Ohio).

Moreover, Saxena White also has secured significant recoveries for injured shareholders through derivative litigation. For example, Saxena White, with Birmingham serving as co-lead plaintiff, achieved a $240 million settlement and significant corporate governance reforms in a derivative action on behalf of Wells Fargo & Company—the largest insurance-funded monetary recovery in a shareholder derivative settlement ever. *See In re Wells Fargo & Co. S'holder Derivative Litig.*, No. 4:16-cv-05541-JST (N.D. Cal.). Saxena White also achieved a $180 million settlement in a derivative action involving a corruption and bribery scheme, one of the largest shareholder derivative settlements in history, in *Bloom v. Anderson (FirstEnergy Corp. Derivative*

12

*Litig.)*, No. 2:20-cv-04534 (S.D. Ohio).  Indeed, Saxena White was selected as Co-Lead Counsel for the *First Energy* matter not only for its "impressive" and "considerable track record[] of successfully prosecuting shareholder derivative actions," but also for its "diverse team" that "best reflects the plaintiffs' diversity and is best suited to act on their behalf." *Bloom v. Anderson (FirstEnergy Corp. Derivative Litig.)*, No. 20-cv-4534, 2020 WL 6710429, at *9 (S.D. Ohio Nov. 16, 2020).  Saxena White would staff this litigation with a diverse team of qualified and capable attorneys that reflects the diversity of the Class.

Pursuant to L.R. 83.4, Birmingham has selected SJ&G to serve as Local Counsel for the Class.  SJ&G has extensive experience prosecuting complex litigation, including securities class actions, and will serve to facilitate the litigation on a local level.  *See* Stranch Decl., Ex. E (Firm resume of SJ&G).  For example, founding partner Gerard Stranch was the lead trial attorney and managed over 20 attorneys plus paralegals and clerks for the Sullivan Baby Doe opioids case against Purdue Pharmaceuticals, Mallinckrodt, Endo Health Solutions and Endo Pharmaceuticals, Inc. (*Staubus v. Purdue Pharma LP*, No. C41916-C (Tenn. Cir. Ct., Sull. Cnty.)), which resulted in two bankruptcies that included negotiated multi-billion-dollar national settlement deals for Purdue Pharma and Mallinckrodt, and a default judgment on liability against Endo for repeated discovery violations.  The remaining claims against Endo in the landmark case settled as jury selection was beginning for $35 million, the largest per capita opioid recovery against Endo by multiple orders of magnitude.[3]  In sum, given its history with securities class actions in this District, SJ&G will capably serve the Class.

---

[3] For this work, Mr. Stranch and his opioid litigation team were honored as the "Tennessee Trial Lawyer of the Year" by the Tennessee Trial Lawyers Association.

Saxena White and SJ&G have the skill, knowledge, and experience that will enable Birmingham to prosecute this action effectively and expeditiously. Thus, the Court may be assured by appointing Birmingham as Lead Plaintiff and approving its selection of Lead Counsel and Local Counsel that the Class will receive the highest caliber of representation. Accordingly, the Court should approve Birmingham's selection of Saxena White to serve as Lead Counsel and SJ&G to serve as Local Counsel for the Class.

## V.    CONCLUSION

For the foregoing reasons, Birmingham respectfully requests that the Court: (1) appoint Birmingham to serve as Lead Plaintiff for the Class; (2) approve Birmingham's selection of Saxena White to serve as Lead Counsel for the Class and for SJ&G to serve as Local Counsel for the Class; and (3) grant any such other and further relief as the Court may deem just and proper.

Dated: January 27, 2025

Respectfully submitted,

**STRANCH, JENNINGS & GARVEY PLLC**

By: */s/ J. Gerard Stranch IV*

J. Gerard Stranch IV
The Freedom Center
223 Rosa L. Parks Avenue
Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com

*Local Counsel for Proposed Lead Plaintiff
City of Birmingham Retirement and Relief
System, and Proposed Local Counsel for the
Class*

**SAXENA WHITE P.A.**
Marco A. Dueñas (*pro hac vice* forthcoming)
10 Bank Street, Suite 882
White Plains, NY 10606
Tel.: (914) 437-8551

14

Fax: (888) 631-3611
mduenas@saxenawhite.com

*Counsel for Proposed Lead Plaintiff City of
Birmingham Retirement and Relief System,
and Proposed Lead Counsel for the Class*

15

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 27, 2025, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all

registered users.

*/s/ J. Gerard Stranch IV*
J. Gerard Stranch IV
