**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | |
|---|---|
| LABORERS LOCAL #235 PENSION FUND, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RENTOKIL INITIAL PLC, ANDREW M. RANSOM, STUART M. INGALL-TOMBS, and BRADLEY S. PAULSEN,<br><br>Defendants. | Case No. 2:24-cv-2932-SHL-tmp<br><br>**ORAL ARGUMENT REQUESTED** |

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ....................................................................................................................... 3

    I.   The Opposition Confirms The Complaint's Failure To Plead A False Or
    Misleading Statement................................................................................................. 3

       A.  Plaintiff Fails To Identify A Single Statement That Was False When Made. ............... 3

       B.  The PSLRA's Safe Harbor Protects Defendants' Forward-Looking Statements. ......... 6

          1.  Plaintiff Concedes That Many Of Defendants' Statements Were Forward-
          Looking. .............................................................................................................. 7

          2.  Meaningful Cautionary Language Accompanied Defendants' Forward-
          Looking Statements. ............................................................................................ 8

          3.  The Opposition Identified No Factual Allegation That Any Defendant Had
          Actual Knowledge A Statement Was False When Made. ...................................... 9

       C.  Optimistic Statements Regarding Integration Are Inactionable Puffery Or
       Opinions. ............................................................................................................... 9

    II.  The Opposition Confirms That The Complaint Fails To Plead A Strong Inference
    Of Scienter. ............................................................................................................. 10

       A.  The Opposition Identifies No Divergence Between Rentokil's Internal Reports
       And Defendants' Statements. ................................................................................ 10

       B.  The Opposition Confirms That The Statements Of Former Employees Do Not
       Support Scienter. .................................................................................................. 12

       C.  The Opposition's Remaining Arguments Fail To Support Scienter. ..................... 13

       D.  Viewed Holistically, Plaintiff's Scienter Allegations Are Far Less Compelling
       Than The Competing Inference Of Innocence. ..................................................... 15

    III. The Complaint Fails to State a Section 20(a) Claim. ............................................... 15

CONCLUSION ................................................................................................................. 15

# TABLE OF AUTHORITIES

**Page**(s)

## Cases

*Ashland, Inc. v. Oppenheimer & Co.*,
    648 F.3d 461 (6th Cir. 2011) ...................................................................................................9

*Barry v. Colony NorthStar, Inc.*,
    2019 WL 13237719 (C.D. Cal. Aug. 1, 2019)...........................................................................8

*Buchanan v. Pilgrim's Pride Corp.*,
    2011 WL 3047333 (E.D. Tenn. July 25, 2011) .........................................................................1

*Dailey v. Medlock*,
    551 F. App'x 841 (6th Cir. 2014) .............................................................................................4

*In re Diebold Nixdorf, Inc., Sec. Litig.*,
    2021 WL 1226627 (S.D.N.Y. Mar. 30, 2021) .......................................................................10

*In re Fibrogen, Inc.*
    2022 WL 2793032 (N.D. Cal. 2022) ......................................................................................14

*In re Ford Motor Co. Sec. Litig.*,
    381 F.3d 563 (6th Cir. 2004) ...................................................................................................9

*Freudenberg v. E\*Trade Fin. Corp.*,
    712 F. Supp. 2d 171 (S.D.N.Y. 2010)....................................................................................12

*Ind. Pub. Ret. Sys. v. AAC Holdings, Inc.*,
    2021 WL 1316705 (M.D. Tenn. Apr. 8, 2021).......................................................................14

*Ind. Pub. Ret. Sys. v. SAIC, Inc.*,
    818 F.3d 85 (2d Cir. 2016)......................................................................................................10

*Ind. State. Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v.
    Omnicare, Inc.*,
    583 F.3d 935 (6th Cir. 2009) .................................................................................................12

*Institutional Invs. Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009)......................................................................................................8

*Kolominsky v. Root, Inc.*,
    100 F.4th 675 (6th Cir. 2024) ...................................................................................................4

*La. Sheriffs' Pension & Relief Fund v. Cardinal Health, Inc.*,
    2021 WL 4397946 (S.D. Ohio Sept. 27, 2021) .....................................................................15

*Miller v. Champion Enters. Inc.*,
    346 F.3d 660 (6th Cir. 2003) ..............................................................................................7, 8

*In re Omnicare, Inc. Sec. Litig.*,
    769 F.3d 455 (6th Cir. 2014) .................................................................................................10

*Padilla v. Comm. Health Sys., Inc.*,
    2022 WL 3452318 (M.D. Tenn. Aug. 17, 2022) ....................................................................14

*Pittman v. Unum Grp.*,
    861 F. App'x 51 (6th Cir. 2021) ..........................................................................................11

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
    759 F.3d 1051 (9th Cir. 2014) ............................................................................................14

*Prodanova v. H.C. Wainwright & Co.*,
    993 F.3d 1097 (9th Cir. 2021) ......................................................................................14, 15

*Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*,
    2022 WL 989240 (W.D. Tenn. Mar. 31, 2022) *aff'd*, 83 F.4th 514 (6th Cir.
    2023) ....................................................................................................................................10

*Weiner v. Tivity Health, Inc.*,
    365 F. Supp. 3d 900 (M.D. Tenn. 2019)...............................................................................8

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021) ..............................................................................................7

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ..............................................................................................14

## Statutes

15 U.S.C. § 78-u5 ....................................................................................................... 6-8

iii

**INTRODUCTION**

In their opening brief, Defendants showed that the Complaint fails to plead any false or misleading statement. In search of such a statement, the Opposition largely stakes this lawsuit on Mr. Ransom's single, unscripted comment on July 25, 2024 that Rentokil had "done the systems integration." The Opposition mischaracterizes this comment no fewer than ten times to argue that it somehow represented that Rentokil would never face technical challenges in completing a massive, multi-year integration project. *See* Opp. 2, 8, 16, 18, 20, 25-27. It plainly did not make that representation. Mr. Ransom was answering a securities analyst's question at a live conference. The full transcript of the conference explains that the Company had developed an IT platform for the businesses it was integrating—what Mr. Ransom described as the "end-state" systems—making clear that those systems had been deployed to only *nine* branches, out of hundreds, at that time. Ex. 15 at 22-23; *see also id.* 2, 11.[1] The analyst who asked the question understood that the branches were not yet integrated; that was the premise of her question to Mr. Ransom: "[W]ill you finally be doing some of the full integrations" later in the year? *Id.* at 22. Anyone who attended the conference or read the 22 pages of the transcript preceding Mr. Ransom's answer would understand that, too. So the purported contradiction at the heart of the Complaint is non-existent. It is true *both* that Rentokil completed its design of the integrated systems by July 25, 2024 *and* that it continued to work through issues as it rolled out that platform at individual branches.

Although Plaintiff occasionally retreats from its claim that every IT issue Defendants faced after July 25, 2024 exposed their statements as fraud, it never identifies a false statement. The Opposition admits that "Defendants never promised investors that they had completed the entire

---

[1] This and the other exhibits submitted in support of the Motion to Dismiss are incorporated into the pleadings or are judicially noticeable and may be considered in ruling on this motion. *See* Doc. 39. Plaintiff has not objected and, thus, has waived any objection to their consideration. *See Buchanan v. Pilgrim's Pride Corp.*, 2011 WL 3047333, at *1 (E.D. Tenn. July 25, 2011).

1

integration or that all possible IT issues had been permanently resolved." Opp. 5. Thus, the Opposition pivots to arguing that "Defendants falsely told investors they had 'completed' critical milestones in the integration process when they had not." *Id.* So what were those specific, critical milestones? What factual allegations plead they were not completed? And what factual allegations plead that Defendants deliberately defrauded investors or misspoke with reckless disregard for deceiving them? A searching examination of the Complaint and Opposition reveals there are none.

What is left of the Complaint is narrow and easily addressed.

*First*, the Opposition fails to identify an actionable statement. Plaintiff does not dispute that Rentokil's projections are forward looking. ¶¶ 137, 145, 148 (financial projections, including synergies). Plaintiff acknowledges that these statements were accompanied by cautionary language and does not seriously challenge the sufficiency of those warnings. Opp. 21-22. And Plaintiff does not plead that Defendants actually *knew* these projections were false. These statements are, thus, shielded from liability under the PSLRA's safe harbor—on two, separate grounds. The Opposition also does not meaningfully dispute that optimistic statements about Defendants' progress on the integration are inactionable puffery or opinions. *See* ¶¶ 137, 140, 141, 152-56, 161-63. Plaintiff largely ignores most of the other statements discussed in the Complaint, *e.g.*, ¶¶ 140-41 (completion of Phase One and related milestones), and fails to raise any arguments that others were false, ¶ 147 (launch of combined general ledger and internal reporting systems).

*Second*, the Opposition fails to identify any particularized allegations of scienter. Many of Plaintiff's scienter arguments may be rejected because they turn on the same mischaracterization of Defendants' statements described above. Courts have consistently rejected the remainder of Plaintiff's scienter theories—about the size of the integration, the departure of certain officers, and seniority of the Individual Defendants—as insufficient as a matter of law.

This case highlights that integrating large companies and predicting their future performance is difficult. But struggling in the face of a challenge is not fraud, and predictions are not actionable under the securities laws. Plaintiff has strained to make this case about anything else but fails. This case should be dismissed.

## ARGUMENT

**I.    The Opposition Confirms The Complaint's Failure To Plead A False Or Misleading Statement.**

**A.    Plaintiff Fails To Identify A Single Statement That Was False When Made.**

The Opposition confirms the Complaint's failure to plead that any of Defendants' statements were false or misleading when made. Defendants' specific IT updates are unchallenged. *See* Opp. 16-20. For example, there is no dispute that Defendants had "developed and tested 22 systems with 190 features" when they said they did. *See* Opp. 8 (citing ¶ 60). The Opposition does not contend that Defendants represented that they had deployed to all branches various customer relationship management ("CRM") and sales tools at the times when branch employees complained they were lacking. *See* Mot. 19. Nor does Plaintiff dispute that Defendants accomplished the specific milestones they disclosed, including developing a combined general ledger and internal reporting system. *See* Opp. 17-18.

Instead, the Opposition largely bets the house on statements Mr. Ransom made at a conference call on July 25, 2024 concerning Rentokil's completion of Phase Two of the integration. Plaintiff mischaracterizes those statements badly. Mr. Ransom was addressing a securities analyst who understood that the IT integration was not complete and made that clear by asking if Rentokil would be "doing some of the full integrations" later that year. Ex. 15 at 22. In his unscripted response, Mr. Ransom acknowledged that they "still got other things to do," but took pride in having designed the IT systems to which they were just starting to transition the branches. *Id.* at

3

22-23. In a single line, he said "we have done the systems integration," *id.* at 22, but the preceding 22 pages of the transcript make clear that Rentokil had designed the final platform for the integrated company—the "end state" system—to which the branches would transition over more than a year. At that time, Rentokil had deployed that system to only *nine* branches. *See, e.g.*, *id.* at 2 (Ransom: "Today, our end state systems and processes are live and they're working well in the first 9 branches that have been integrated."); *id.* at 11 (Paulsen: "To date, nine branches have undertaken the full systems and data integration."). Mr. Ransom cautioned that Rentokil still had to "get all the systems fully plumbed in" and "get through the integration." *Id.* at 22.

In the Sixth Circuit, statements challenged by securities plaintiffs must be "[r]ead in context." *Kolominsky v. Root, Inc.*, 100 F.4th 675, 686 (6th Cir. 2024). In *Kolominsky*, the plaintiff claimed it was misleading for a defendant to state that it "designed" a strategy "delivering customer acquisition costs below the average" because those costs were "not below average" when the statement was issued. *Id.* The district court dismissed the claim. The Sixth Circuit affirmed, reasoning that the statement, read in its context, was historical and did not promise low acquisition costs going forward. *Id.*; *see also Dailey v. Medlock*, 551 F. App'x 841, 848 (6th Cir. 2014) (similar, dismissing Section 10(b) claim). Here, Mr. Ransom's statement, read in its context, was entirely consistent with the possibility that Rentokil would face future integration challenges.

The Opposition also wrongly and repeatedly assails Mr. Ransom's comment—from the same live answer at the same conference—that, "[w]e have had multiple Day One glitches, every single one of which has been resolved and put to bed." Ex. 15 at 23 (discussed at Opp. 2, 4, 9, 16-20, 22, 26). "Day One glitches" are the *first* IT issues Rentokil confronted, and there is no factual allegation that Rentokil had not surmounted those *initial* hurdles in building the end-state platform it disclosed. Instead, the Opposition harps on other assorted IT issues that Defendants never

4

disclaimed.  *See* Opp. 17-18; *cf. id.* at 5 (admitting "Defendants never promised . . . all possible IT issues had been permanently resolved").  At times, it even excises the words "Day One" as if to portray Mr. Ransom's statement as an assurance that there would be no glitches at all.  *See* Opp. 19, 26.  Again, there is no misstatement in what Defendants actually said.

The Opposition's assertion that the integration was not "on track" is just as flawed.  Plaintiff insists that the integration was not on schedule since the systems integration was not complete for all branches by July 2024.  Opp. 17-20.  But Defendants never claimed that IT-related workstreams would be completed by July 2024.  Instead, they told investors they were on track to complete branch integrations by 2026.  Ex. 4 at 8.  The Opposition does not dispute this timeline.  *See* Opp. 18.  Nor does it identify allegations that Defendants failed to meet specific integration milestones.

Defendants debunked the Complaint's assertion that Defendants were forced to "abandon" the integration in March 2025.  Mot. 20, 26.  To the contrary, Defendants announced they would maintain several well-known regional pest control brands, rather than rebranding all locations, and they planned to *increase* the scope of the integration from 400 to about 500 branch locations.  *Id.* at 8, 20.  The Opposition has no response, other than to miscite critiques from outside analysts.  Opp. 15-16 & n.4.  These analysts criticized the Company's plan but did not suggest, as Plaintiff does, that Defendants were "abandoning their plan to integrate Rentokil and Terminix branches."  *Compare* ¶ 175 with Opp. 16 (citing RBC commentary on changes to "branding" and "branch numbers" plans).  In any event, Rentokil was entitled to update its strategy; a *change* in plans does not make truthful descriptions of earlier plans fraudulent.

5

Finally, Plaintiff alleges no facts showing that Defendants' synergy forecasts were false when made. The best it can muster is the accounts of some former employees who claim that they personally "didn't see any [synergies]." ¶ 100. But a few anecdotes reporting declining sales say nothing about whether Rentokil achieved its overall synergy forecasts. Nor does Defendants' decision to change the way that the Company *reported* synergies beginning in March 2025. Contrary to Plaintiff's allegations, Defendants never disclaimed merger synergies; instead, they ceased reporting on synergies because "[t]hree years post the acquisition announcement of Terminix" and in light of "inflationary cost increases," reporting net synergies became "overly subjective." Ex. 9 at 8. Nonetheless, Defendants "remain[ed] confident" that "operational cost savings will be achieved, in line with initial expectations of gross synergies." *Id.* In response, the Opposition quibbles with the definition of net synergies relative to "operational cost savings." Opp. 20 n.7. But two things are clear: Defendants never said their prior synergy forecasts were inaccurate when made, and Plaintiff fails to plead any factual allegations to the contrary.[2]

**B.     The PSLRA's Safe Harbor Protects Defendants' Forward-Looking Statements.**

The Opposition confirms that Defendants' statements about projected financial results, cost synergies, and integration goals are forward looking, and that those statements are protected by both prongs of the PSLRA safe harbor: they were (i) "identified as . . . forward-looking," and "accompanied by meaningful cautionary statements," and (ii) made without "actual knowledge" they were false. 15 U.S.C. § 78u-5(c)(1)(A)(i), (B)(i). All claims based on these predictive statements should be dismissed.

---

[2] The Opposition asserts that synergy projections must have been false because they were driven by cost cutting. Opp. 20. But cost-cutting *is* a key synergy from mergers. And even if some former employees reported that cost-cutting resulted in fewer sales or marketing leads at their branches, that says nothing about Rentokil's overall synergies across the business or the truthfulness of the expectations it disclosed.

### 1. Plaintiff Concedes That Many Of Defendants' Statements Were Forward-Looking.

Plaintiff concedes that statements about expected financial performance, including projected synergies, are forward looking. Opp. 21 (calling them "arguably forward-looking").

Plaintiff insists that Defendants' projections about the completion of their integration goals—for example, that the Company was "on track"—are not forward looking. *Id.* This argument clashes with the text of the PSLRA's safe harbor and the weight of authority interpreting it. Forward-looking statements include statements "of the plans and objectives of management for future operations" including "any statement of the assumptions underlying or relating to such statement." 15 U.S.C. § 78u-5(i)(1). Therefore, statements about a company's ability to execute its goals are forward looking, even if they "imply[] some present circumstances." *See Miller v. Champion Enters. Inc.*, 346 F.3d 660, 677 (6th Cir. 2003).[3]

Courts of appeals have thus held that "on track" statements are forward-looking. Every prediction for future operations "*necessarily* reflects an implicit assertion that the goal is achievable based on current circumstances," therefore "an unadorned statement that a company is 'on track' to achieve an announced objective" is merely a way of reaffirming the objective itself. *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1192 (9th Cir. 2021). Accordingly, Defendants' statements that the integration remained "on track" expressed their "continuing comfort" with their prior

---

[3] Plaintiff attempts to brush off *Miller* on the ground that "the challenged statement did not state any definite present fact," but that misrepresents the facts of that case. Opp. 21 n.8. The statement challenged in *Miller* included the assertions that "outstanding earnings growth" had "continu[ed]" and that "our retail strategy" had been "successful[ly] implement[ed]." 346 F.3d at 677. Those statements are more "definite" than the general assertion that the integration was "on track."

projections and "[did] not transform the statements . . . into non-forward-looking assertions outside of the Safe Harbor." *Institutional Invs. Grp. v. Avaya, Inc.*, 564 F.3d 242, 256 (3d Cir. 2009).[4]

### 2. Meaningful Cautionary Language Accompanied Defendants' Forward-Looking Statements.

The Opposition contends that the cautionary language accompanying Defendants' forward-looking statements was not meaningful because it implied no IT issues were "on the horizon" when such issues had already materialized. *See* Opp. 21-22 (quoting *Weiner v. Tivity Health, Inc.*, 365 F. Supp. 3d 900, 911 (M.D. Tenn. 2019)). But Defendants made no such implication. They explained throughout the class period that there would "inevitably be some issues" with the integration, Ex. 13 at 7, including "difficulties in integrating, streamlining and optimizing the Group's IT systems, processes, and technologies" which could impact their growth projections, *see, e.g.*, Ex. 6 at 31-32; Ex. 4 at 34-35; Ex. 3 at 4-5. And Defendants never implied that IT issues were merely hypothetical. To the contrary, they told investors that they experienced multiple "Day One glitches" as soon as they started individual branch integrations. Ex. 15 at 23. These statements are precisely the kind of "meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78-u5(c)(1)(A)(i). Plaintiff attempts to dodge these warnings by insisting that they did not disclose all the "specific problems" experienced during integration. Opp. 22. But Defendants were "not required to detail every facet or extent of that risk to have adequately disclosed the nature of the risk." *Miller*, 346 F.3d at 678.

---

[4] Plaintiff does not grapple with these on-point decisions and instead relies on a pair of non-binding cases from other districts. *See* Opp. 21. Plaintiff cannot avoid the safe harbor by claiming the on-track statements "accompanied more concrete, objective statements." *Id.* More concrete statements (*e.g.*, about completion of Phases Two and Three of the integration) may be "separately challenged" but "do not take the 'on track' statement[s] outside of the PSLRA." *Barry v. Colony NorthStar, Inc.*, 2019 WL 13237719, at *11 (C.D. Cal. Aug. 1, 2019).

8

**3.     The Opposition Identified No Factual Allegation That Any Defendant Had Actual Knowledge A Statement Was False When Made.**

The Opposition's only attempt to show that Defendants knew their statements were false is buried in a footnote that merely argues that Mr. Paulsen allegedly attended townhall meetings concerning integration issues.  Opp. 22 n.9.  This footnote identifies nothing that Mr. Paulsen learned at these meetings that contradicted anything that he or other Defendants said.  This comes nowhere close to the PSLRA's "exacting pleading requirements for pleading scienter," *Ashland, Inc. v. Oppenheimer & Co.*, 648 F.3d 461, 469 (6th Cir. 2011) (cleaned up); *see infra* at 10-15, much less the heightened requirement for pleading actual knowledge under the safe harbor.  And absent specific allegations of actual knowledge, Defendants' forward-looking statements are protected regardless of whether they appear alongside cautionary language.

**C.     Optimistic Statements Regarding Integration Are Inactionable Puffery Or Opinions.**

The Complaint is replete with generalized accusations that Defendants committed fraud by making "positive statements" about the Terminix integration.  *See, e.g.*, ¶¶ 137-38, 140-42 (challenging "wholly positive statements").  This corporate puffery is inactionable as a matter of law.  *In re Ford Motor Co. Sec. Litig.*, 381 F.3d 563, 570 (6th Cir. 2004).  Specifically, the challenged statements positively describing the integration process and expressing optimism about its progress constitute immaterial puffery.[5]

---

[5] The Opposition tries to sidestep the immateriality of these statements by faulting the Motion for not cataloguing each of them from the Complaint's 221 paragraphs.  Opp. 23.  But the Motion (at 15) gave clear examples, which are further identified here.  *See* ¶ 137 ("good progress"; the plan had "progressed well"; defendants were "confident"); ¶ 140 (milestones were "substantial"); ¶ 141 ("streamlined and unified the organization"); ¶ 152 (company had a "green light" for integration which was "successfully underway"); ¶ 153 ("excellent" and "outstanding . . . progress"; the integration had gone "very well"); ¶ 154 (systems had been "successfully tested" and were "operating well"; integration had a "good start"); ¶ 155 (the IT systems were "a big thing"; integration has "gone really, really well"); ¶ 156 (systems integration was "a big tick" and was

Several of these statements are also opinions, and they must also be dismissed for lack of factual allegations that they were knowingly false.[6]

Plaintiff claims these statements are not puffery because they related to Defendants' progress on integration efforts. Opp. 22-23. But subject matter does not change the fact that these statements were only generalized expressions of optimism that are not susceptible to being proven or disproven; that is "what prevents them from rising to the level of materiality required to form the basis for assessing a potential investment." *In re Diebold Nixdorf, Inc., Sec. Litig.*, 2021 WL 1226627, at *10 (S.D.N.Y. Mar. 30, 2021) (quoting *Ind. Pub. Ret. Sys. v. SAIC, Inc.*, 818 F.3d 85, 97-98 (2d Cir. 2016)); *see also Teamsters Loc. 237 Welfare Fund v. ServiceMaster Glob. Holdings, Inc.*, 2022 WL 989240, at *18 (W.D. Tenn. Mar. 31, 2022) (holding that statements touting "tremendous progress on the core business" were immaterial) *aff'd*, 83 F.4th 514 (6th Cir. 2023).

## II.     The Opposition Confirms That The Complaint Fails To Plead A Strong Inference Of Scienter.

The deficiencies in Plaintiff's scienter allegations independently warrant dismissal.

### A.     The Opposition Identifies No Divergence Between Rentokil's Internal Reports And Defendants' Statements.

Plaintiff's principal argument is that Defendants' public statements about the integration diverged from their internal information. Opp. 25-27. But as explained above, Plaintiff fails to show any divergence at all. *See supra* 3-6. Indeed, Plaintiff cites no factual information whatsoever that was available to Defendants at Rentokil that contradicts their statements. Plaintiff

---

"[w]ell done, good, excellent"); ¶ 161 ("integration is going well"); ¶ 162 (company had done "very, very significant heavy lifting"; had resolved issues "very, very, very quickly"); ¶ 163 (defendants "remediated the vast majority" of disruption).

[6] The Opposition ignores that the opinion statements must be dismissed since they were not made with actual knowledge of their falsity. *See* Opp. 22-23; Mot. 16 n.9 (listing opinion statements); *see also In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 470 (6th Cir. 2014).

argues there was a "highly detailed" "Road Map" that identified some IT issues with the integration, Opp. 11, 25, but never identifies what *facts* in that document contradicted particular statements. Plaintiff does not claim that the Road Map showed Phase Two was not, in fact, complete on July 24, 2024. Instead, Plaintiff seems to argue that information shared internally was detailed, and so it really hopes those details contradicted public statements. That's not a particularized allegation of scienter.

Plaintiff also cites Defendants' statements that they tracked the integration process. Opp. 26-27. But general allegations "that executives are intimately familiar with a core component of their business does little to suggest fraudulent intent." *Teamsters Local 237 Welfare Fund*, 83 F.4th at 531 (quoting *Pittman v. Unum Grp.*, 861 F. App'x 51, 55 (6th Cir. 2021)).[7] Critically, the Complaint leaves the Court to guess what Defendants learned in their monitoring that refuted their statements. Without alleging "exactly what" was revealed and how it contradicted a statement, *id.*, the Complaint fails to plead divergence that supports a strong inference of scienter.

The Opposition declares that Defendants' July 25, 2024 statement that Phase Two of the integration was "complete" could not possibly be true in light of their September 11, 2024 statement that Rentokil and Terminix were "two separate businesses" and that further integration work was necessary. Opp. 25. But that "divergence" is illusory; Phase Two merely *prepared* for branch integration. Defendants made clear that only *nine* of Rentokil's hundreds of branches had

---

[7] The Opposition attempts to distinguish *Teamsters* on the ground that the townhall meetings that discussed "delays" related to the integration supposedly "flatly contradict[ed]" what Defendants told investors. Opp. 26 n.13. But as explained above and below, *see supra* at 11; *infra* at 12-13, Plaintiff's allegations fall far short of identifying with particularity any facts discussed at the townhall meetings that contradicted Defendants' public statements. Thus, as in *Teamsters*, Plaintiff "offers no detail that allows an assessment of whether [Rentokil's] disclosures differed in any significant way from those internal discussions." 83 F.4th at 533.

been integrated by July. *See supra* at 3-6. Of course, there were still different operational processes among the components of the Company that had not been integrated. *Id.*

Finally, the Opposition cites former employees' allegations that the Company shifted its focus away from branch integration in Florida to a different region. Opp. 25-26. Even if true, that does not reflect a divergence from Defendants' statements that, for example, "end state systems and processes [were] live" and had been deployed "in the first 9 branches that [had] been integrated." Ex. 15 at 2. Defendants disclosed that taking a "three-month evaluation" period to assess the branch integration strategy was always part of the plan. *See* Ex. 4 at 9. That Defendants decided to make adjustments to the plan did not contradict anything they said.

### B. The Opposition Confirms That The Statements Of Former Employees Do Not Support Scienter.

Like the Complaint, Plaintiff's Opposition relies heavily on the accounts of 19 former employees to assert that Defendants acted with scienter. Opp. 28-29. But as Defendants explained, Mot. 27—and Plaintiff does not contest, *see* Opp. 29—most of the former employees are not alleged to have directly interacted with Defendants *at any time*. Therefore, they cannot reliably attest to Defendants' motive or knowledge. Mot. 26-27 (citing *Ind. State. Dist. Council of Laborers & Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 946 (6th Cir. 2009) (former employee testimony can be disregarded where it could not "suggest any knowledge on the part of any of the defendants")). In any event, most of those former employees merely voiced complaints about difficulties with branch integration, *see* Opp. 28-29, which were not inconsistent with Defendants' challenged statements, *see supra* at 3-6.[8]

---

[8] Any "company-wide" inference that Plaintiff seeks to draw from the former employees is therefore inapposite. *See* Opp. 29. Nonetheless, Plaintiff's reliance on *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171 (S.D.N.Y. 2010), is misplaced, because the former employees there were alleged to have "knowledgeable positions" including having "first-hand interactions with the Defendants." *Id.* at 196.

CWs 5, 6, and 10 claim they heard Mr. Paulsen speak at townhall meetings but do not claim they interacted with him or specify what he said.  Opp. 29 (citing ¶¶ 94-96).  According to Plaintiff, these former employees reported that the townhall meetings covered difficulties with the integration, including delays in the Company's "Road Map."  *Id.*  But Plaintiff does not plead what problems were discussed in those meetings and whether they contradicted anything that Defendants told investors.  Without those details, the former employee accounts fail to provide the necessary "detail that allows an assessment of whether [Rentokil's] disclosures differed in any significant way from those internal discussions" or whether any Defendant acted with scienter.  *Teamsters Local 237 Welfare Fund*, 83 F.4th at 533.  CW 10 certainly does not make a case for fraud by recalling (at a time the Complaint fails to specify) that Mr. Paulsen knew Rentokil "wasn't integrated yet with Terminix," ¶ 96; Defendants made that clear throughout the class period.

### C.    The Opposition's Remaining Arguments Fail To Support Scienter.

None of Plaintiff's remaining arguments gives rise to a strong inference of scienter.

*First*, Plaintiff asserts that the "closeness in time" of the challenged statements and the purported "disclosure of inconsistent information" supports scienter.  Opp. 27-28.  But Defendants' statements in September 2024 that the companies were "not integrated yet" were fully consistent with their prior statements that Phase Two of *four* was complete.  *See supra* 3-6.

To create the specter of inconsistency, the Opposition turns to analyst reports claiming that the September 2024 update "raise[d] questions over guidance and credibility."  Opp. 27-28 (citing ¶¶ 117-18).  Analysts, however, did not say the Company misspoke about completing Phase Two or lied about its progress with IT integration; they focused on the Company's revisions to its "forecasts."  ¶ 117.  Plaintiff focuses elsewhere because the forecasts are classic forward-looking statements protected by the PSLRA's safe harbor.  *See supra* at 6-9.  But Plaintiff finds no support in the analyst reports it quotes for the challenges it pursues to statements that are less clearly

forward looking. In any event, analyst reports are generally "conclusory" and "do not establish scienter by themselves." *In re Fibrogen, Inc.* 2022 WL 2793032, at *22 (N.D. Cal. 2022). That is because securities analysts cannot know someone else's state of mind.

*Second*, Plaintiff argues the Court should presume Defendants knew about facts related to "the completion of Phase 2 of the integration" because of the "critical importance" of the Terminix integration. Opp. 28. The Sixth Circuit has never held that the so-called "core operations" doctrine supports such a presumption after the enactment of the PSLRA. *See Padilla v. Comm. Health Sys., Inc.*, 2022 WL 3452318, at *28 (M.D. Tenn. Aug. 17, 2022); Mot. 24-25. Even if it did, the doctrine would not apply here. The core operations doctrine supports an inference of scienter only when a plaintiff pleads that "defendants had *actual access*" to particular information that contradicted their public statements. *Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1111 (9th Cir. 2021) (emphasis added); *see also Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir. 2014) (recognizing that "[p]roof under this theory is not easy"). But Plaintiff here fails to plead what relevant facts senior officers supposedly knew from their roles. Moreover, courts have declined to "rel[y] on the doctrine as an independent means of showing scienter," *Padilla*, 2022 WL 3452318, at *28, and have instead found that it can simply reinforce other allegations of "actual knowledge," *Ind. Pub. Ret. Sys. v. AAC Holdings, Inc.*, 2021 WL 1316705, at *19 (M.D. Tenn. Apr. 8, 2021). Here, the Complaint lacks particularized allegations of actual knowledge and, thus, cannot benefit from the core operations doctrine.

*Third*, the Sixth Circuit has made clear that Plaintiff's "[m]ere conclusory allegations about the resignations of company executives d[o] not, without more, give rise to a strong inference of scienter." *Teamsters Local 237 Welfare Fund*, 83 F.4th at 531 (cleaned up) (quoting *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1002 (9th Cir. 2009)); Mot. 28-29. Plaintiff's

14

protestations to the contrary accomplish nothing.  Opp. 29-30 (declining to distinguish Defendants'

binding case law in favor of a decision from another district court (citing *La. Sheriffs' Pension &*

*Relief Fund v. Cardinal Health, Inc.*, 2021 WL 4397946, at *15 (S.D. Ohio Sept. 27, 2021)).

> **D.    Viewed Holistically, Plaintiff's Scienter Allegations Are Far Less Compelling Than The Competing Inference Of Innocence.**

Whether viewed individually or holistically, the allegations support inferences of

innocence that vastly outweigh any inference of scienter.  Plaintiff does not dispute that the

Complaint fails to identify any motive, *see* Mot. 30, which means it faces a "substantial hurdle in

establishing scienter."  *Prodanova*, 993 F.3d at 1103.  Defendants had nothing to gain from lying

about the Company's integration progress, and it is nonsensical for Plaintiff to suggest that they

embarked on a fraudulent scheme to conceal its IT challenges for just over two months in the

middle of a year—from July to September 2024.  As Defendants explained (Mot. 29-30), the only

cogent inference from the facts alleged is that Defendants acted in good faith.  They developed a

four-phase plan for a highly complex integration process involving hundreds of branch locations;

disclosed it in detail; made projections about the Company's future performance; and updated

investors when the Company achieved key milestones or needed to adjust its plan or projections.

No particularized allegations in the Complaint support a strong inference of scienter.

**III.    The Complaint Fails to State a Section 20(a) Claim.**

Plaintiff concedes that their Section 20(a) claim first requires a primary violation of Section

10(b).  Opp. 30.  Because the Complaint fails to state a claim under Section 10(b) for the reasons

stated above, the Court should also dismiss the Section 20(a) claim.

**CONCLUSION**

Defendants respectfully request that the Court dismiss the Complaint with prejudice.

15

16

Dated:  August 11, 2025

Respectfully submitted,

*/s/ Jason J. Mendro*

Jason J. Mendro (admitted *pro hac vice*)
**GIBSON, DUNN & CRUTCHER LLP**
Lissa M. Percopo (admitted *pro hac vice*)
1700 M Street, N.W.
Washington, D.C.  20036
Telephone: (202) 955-8500
Facsimile: (202) 467-0539
jmendro@gibsondunn.com
lpercopo@gibsondunn.com

**BUTLER SNOW LLP**
Robert L. Crawford (Tenn. Bar #007216)
6075 Poplar Avenue, Suite 500
Memphis, TN  38119
Telephone: (901) 680-7395
Facsimile: (901) 680-7201
larry.crawford@butlersnow.com

*Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 11, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users.

/s/ *Jason J. Mendro*